UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Frank Applewhite-Bey,

Plaintiff,

vs.                                  REPORT AND RECOMMENDATION

Lewis C. Tripoli, M.D.,
Dean Lee, and Correctional
Medical Services, Inc.,

Defendants.          Civ. No. 05-2160 (DSD/RLE)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

I. <u>Introduction</u>

This matter came before the undersigned United States Magistrate Judge

pursuant to a general assignment, made in accordance with the provisions of Title 28

U.S.C. §636(b)(1)(B), upon the Motion of the Defendants for Summary Judgment.[1]

---

[1]The Plaintiff has also filed two self-styled Motions. As we recommend that the Defendants' Motion for Summary Judgment be granted, the Plaintiff's "Motion for an Order Mandating that an Expert Witness Is Not Required," <u>Docket No. 34</u>, should be dismissed as moot. In addition, the Plaintiff's "Motion To Accept Plaintiff's Objections to Reply Memorandum," <u>Docket No. 84</u>, appears to be a request for the Court to recognize his objections to the <u>Reply Memorandum in Support</u>, which was filed by the Defendants on October 16, 2006. See, <u>Docket No. 83</u>. Reading this document as a Memorandum of Law from the Plaintiff, we have considered its contents in our analysis of his claims.

For these purposes, the Plaintiff appears pro se, and the Defendants appear by John B. Casserly, Esq.  For reasons which follow, we recommend that the Defendants' Motion for Summary Judgment be granted.

## II.  Factual and Procedural Background

The Plaintiff, who is a Minnesota State prisoner at the Minnesota Correctional Facility, in Faribault, Minnesota ("MCF-Faribault"), commenced this action under Title 28 U.S.C. §1983, alleging the wrongful discontinuance of a prescription medication for a skin condition.  The Plaintiff had previously filed a substantially similar action against the Defendants, which was dismissed, without prejudice, for the failure to effect service of process.  See, Applewhite-Bey v. Tripoli, Civ. No. 04-1709 (DSD/RLE)(D. Minn., August 18, 2005).  In his Complaint, the Plaintiff alleges that he was subjected to cruel and unusual punishment, in violation of his Eighth Amendment rights, as follows:

> The plaintiff sought treatment to stop his skin from being inflamed, cracked, bleeding, soreness and to prevent the future spread of infection due to the defendants' refusal to prescribe an ongoing prescription of Lac Hydrin 12% lotion where it was documented that it is the only thing that had been found to aid the plaintiff's skin condition.  The defendants even gave him repeated doses of medication that his medical file was already documented as not working. [The Plaintiff] informed all prison officials from the Health Service Director, to all three wardens and Dr. Tripoli

> without success.   The defendants do now give [the
> Plaintiff] the medication in question but makes half [sic]
> cut the amount nearly in half and force[] him to pay a
> charge to see [a physician] every three months (now) for a
> condition they know [the Plaintiff] will have for life.

Complaint, Docket No. 1, at pp. 3-4.

The Plaintiff's Complaint was signed "under penalty of perjury," as being "true to the

best of [the Plaintiff's] information, knowledge and belief."   Complaint, supra at p.

4.

At all times relevant to the Plaintiff's Complaint, the Defendant Correctional

Medical Services, Inc. ("CMS"), had the contract to provide health care services to

MCF-Faribault inmates, including the Plaintiff.  See, id. at p. 1, ¶2.  The Defendant

Dr. Lewis C. Tripoli served as the Chief Medical Officer for CMS, see, Affidavit of

Louis C. Tripoli, M.D., Docket No. 63, at p. 1, ¶2, and Dr. Dean Lee served as the

Regional Medical Director, and as an independent contractor for CMS.  See, Affidavit

of Dean Lee, M.D., Docket No. 64, at p. 1, ¶2.[2]

---

[2]In his Complaint, the Plaintiff did not specify if he brought these claims against
the Defendants in their personal as well as their official capacities.  In the context of
a Section 1983 claim, specific pleading of individual capacity claims is required
because public officials must be put on notice that they will be exposed to personal
liability.  See, Andrus v. Arkansas, 197 F.3d 953, 955 (8th Cir. 1999).  Where a
plaintiff has failed to state whether he is suing an official in his individual capacity,
our Court of Appeals has construed the claim to be against the official in his official
capacity only.  See, Johnson v. Outboard Marine Corp., 172 F.3d 531, 535 (8th Cir.

The events which comprise the factual basis for the Plaintiff's claim began shortly after his transfer to MCF-Faribault, in March of 1998, when he was noted to have a skin allergy. See, Affidavit Lee, Docket No. 64-5, Exhibit 3. The Plaintiff has been diagnosed with ichthyosis vulgaris ("ichthyosis"), which cannot be cured, but can be treated with non-prescription emollients or moisturizers.[3] Id. at p. 2, ¶5. CMS has established a course of treatment for patients with severe dry skin, such as that caused by ichthyosis, which has failed to be relieved by non-prescriptive modalities, that includes the emollients Absorbase, and Theraderm. Id. at p. 2, ¶7. The CMS formulary does not include Lac Hydrin 12% lotion ("Lac Hydrin") as an initial medication.[4] Id. at p. 2, ¶8. However, medicines that are not listed in the formulary are available for CMS physicians to prescribe for their patients, subject to approval

---

1999); Egerdahl v. Hibbing Community College, 72 F.3d 615, 620 (8th Cir. 1995)("If a plaintiff's complaint is silent about the capacity in which she is suing the defendant, we interpret the complaint as including only official capacity claims."); Miskovich v. Indep. Sch. Dist. 318, 226 F. Supp. 2d 990, 1013 (D. Minn. 2002). Thus, for the purposes of the Defendants' Motion, we conclude that the Plaintiff has sued the Defendants in their official capacity only.

[3]Ichthyosis vulgaris is a skin disease "characterized by the presence of prominent fine scaling principally on the extensor surfaces of the extremities and back." Dorland's Illustrated Medical Dictionary, p. 873 (29th ed. 2000).

[4]Lac Hydrin is a trademark for a preparation of ammonium lactate, which is "applied topically as a humectant in ichthyosis vulgaris and xerosis." Dorland's Illustrated Medical Dictionary, p. 63 (29th ed. 2000).

by the regional medical director, if the treating physician believes that the non-formulary medication is medically appropriate for that particular patient, and his condition. See, <u>Affidavit of Tripoli</u>, supra at p. 3, ¶¶11-12.

After an initial, physical examination of the Plaintiff at MCF-Faribault in April of 1998, the attending physician concluded that the Plaintiff's skin was "in pretty good shape." <u>Id.</u>, <u>Docket No. 64-5</u>, Exhibit 3. Medical records reflect that the Plaintiff requested a refill of Lac Hydrin in October of 1998, and that the Plaintiff had "good responses" to Lac Hydrin. <u>Id.</u>, <u>Docket No. 64-6</u>, Exhibit 4. The Plaintiff was prescribed a three (3) month supply of Lac Hydrin on December 31, 2001, he picked up a one-month tube from the MCF-Faribault pharmacy on January 5, 2002, did not pick up another tube until February 14, 2002, and failed to pick up a tube in March or April of 2002. <u>Id.</u>, <u>Docket No. 64-6</u>, Exhibit 5. However, on April 1, 2002, the Plaintiff did pick up a bottle of Theraderm. <u>Id.</u> The Plaintiff received Lac Hydrin again on May 16, 2002, and June 26, 2002, but he failed to pick up a tube of Lac Hydrin in July or August of 2002. <u>Id.</u>

On February 12, 2003, the Plaintiff reported to sick call for head lice, where it was noted that his skin was "extremely dry and flaky." <u>Id.</u>, <u>Docket No. 64-8</u>, Exhibit 6. On February 14, 2003, an attending physician submitted a non-formulary drug

request for Lac Hydrin, noting that the Plaintiff's skin condition was "unresponsive to canteen products/Theraderm." See, id., Docket No. 64-9, Exhibit 7. This request was denied by Dr. Lee, who noted that the Plaintiff's skin condition did not rise to the level of seriousness for the use of non-formulary medication, and consequently, the formulary emollient Absorbase was prescribed. Id. Despite not receiving Lac Hydrin, the Plaintiff attended sick call, and other medical appointments, between February 14, 2003, and November 6, 2003, but made no complaint about his skin condition. Id., Docket Nos. 64-8, -11, -12 at Exhibits 6, 9, 10.

On November 6, 2003, the Plaintiff presented at sick call complaining of severe psoriasis, and requesting Lac Hydrin. See, id., Docket No. 64-8, Exhibit 6. The Plaintiff was seen by Dr. Greg Salmi on November 7, 2003, and Dr. Salmi prescribed Theraderm lotion. Id. Although Dr. Salmi described the Plaintiff's ichthyosis as "severe," he did not note any objective findings, such as cracking, bleeding, or seeping. Id. Three days later, on November 10, 2003, the Plaintiff went to sick call, and reported that Theraderm was not helping, and made his skin itch. Id. Dr. Salmi examined the Plaintiff on November 14, 2003, at which time, the Plaintiff stated that Lac Hydrin "worked best for him." Id. at Exhibit 11. Dr. Salmi made a non-formulary request for Lac Hydrin on November 14, 2003, noting "Theraderm/

Absorbase not successful." Id., Docket No. 64-14, Exhibit 12. On November 18, 2003, Dr. Lee denied the non-formulary request, and requested more information as to the "disabling" nature of the Plaintiff's condition. Id.

On November 21, 2003, the Plaintiff was prescribed Absorbase cream. Id. at Exhibit 6. The Plaintiff's skin was evaluated during sick call on November 24, 2003, and was noted to be dry and cracking, but with no swelling or drainage. Id. On December 4, 2003, Dr. Salmi again requested Lac Hydrin for the Plaintiff, which Dr. Lee denied, noting that he had not seen any data showing the efficacy of Lac Hydrin over the formulary preparations. Id., Docket No. 64-16, at Exhibit 14. In his decision, Dr. Lee included a request for information regarding the state of the Plaintiff's skin, and specifically, whether the Plaintiff's skin had cracked and bled while the Plaintiff was using the formulary Absorbase cream. Id.

There is no evidence in the Record to suggest that an attending physician responded to Dr. Lee's inquiry but, on December 19, 2003, Dr. Lee examined the Plaintiff in person. Id., Docket No. 64-17, at Exhibit 15. The Plaintiff told Dr. Lee that the medications, which he had been prescribed, had failed to treat his skin condition, that he had been experiencing bleeding when he was not prescribed Lac Hydrin, and that he had been using canteen preparations and moisturizers since

February of 2003.  In his notes, Dr. Lee  observed that the Plaintiff's medical records did not contain any complaints, or observations of any problems, during the Plaintiff's months without Lac Hydrin.  The Plaintiff insisted that Theraderm "doesn't work," although he admitted that he had only used the Absorbase, which had been prescribed for him in November of 2003, for about one (1) week, before discontinuing it because he felt that it was ineffective.  On examination, Dr. Lee noticed that the Plaintiff's hands showed "marked evidence of dryness and scaling with some fissuring and some small areas of crusting within the fissures."

Dr. Lee concluded that the Plaintiff should be prescribed the non-formulary Lac Hydrin based upon his examination, and prescribed a ninety-day supply, but noted that it was to be used only on those areas of the Plaintiff's body where it was required -- specifically on his hands and intermittently on his lower legs.  Dr. Lee strongly encouraged the Plaintiff to practice soap avoidance and use Absorbase on other areas of his body.  Pursuant to Dr. Lee's prescription, Lac Hydrin was dispensed to the Plaintiff on December 22, 2003.  Id., Docket No. 64-18, Exhibit 16.   Although a clerical error resulted in Dr. Lee's order being entered for a period shorter than ninety (90) days, that inadvertence was corrected by the pharmacy staff without the need for a non-formulary medication review.  Id., Docket No. 64-19, Exhibit 17.  On January

30, 2004, the Plaintiff reported to sick call, and was provided an antibiotic cream for cracks in his hands, until the Lac Hydrin prescription was refilled.  Id. at Exhibit 6. The Plaintiff was prescribed another tube of Lac Hydrin on February 3, 2004, which was twelve (12) days later than he would have received his normal refill pursuant to Dr. Lee's order.  Id. at Exhibit 16.

The Plaintiff saw Dr. Salmi on March 9, 2004, for a medical complaint unrelated to his ichthyosis, at which he requested a refill of Lac Hydrin.  Id. at Exhibit 18.  Although the Record does not contain any reference to the condition of the Plaintiff's skin, Dr. Salmi prescribed Theraderm, and requested an order of Lac Hydrin, id., that was denied by Dr. Lee.  Id., Docket No. 64-21, Exhibit 19.  The Plaintiff reported to sick call on April 13, 2004, with complaints regarding his skin condition, and the attending physician noted that his hands were cracked and bleeding, and occasionally oozed pus.  Id. at Exhibit 18.  Although there were no fissures present on the Plaintiff's hands, Dr. Lee approved the non-formulary request for Lac Hydrin on April 22, 2004, and it was dispensed on April 27, 2004.  Id. at Exhibits 18, 20.

<u>Discussion</u>

A.   <u>The Motion of the Defendants for Summary Judgment</u>.

    1.   <u>Standard of Review</u>.  Summary Judgment is not an acceptable means of resolving triable issues, nor is it a disfavored procedural shortcut when there are no issues which require the unique proficiencies of a Jury in weighing the evidence, and in rendering credibility determinations.  See, <u>Wallace v. DTG Operations, Inc.</u>, 442 F.3d 1112, 1118 (8th Cir. 2006), citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 327 (1986); <u>Midwest Oilseeds, Inc. v. Limagrain Genetics Corp.</u>, 387 F.3d 705, 711 (8th Cir. 2004), cert. denied, 544 U.S. 977, 125 S. Ct. 1860 (2005).  Summary Judgment is appropriate when we have viewed the facts, and the inferences drawn from those facts, in a light most favorable to the nonmoving party, and we have found no triable issue.  See, <u>Smutka v. City of Hutchinson</u>, 451 F.3d 522, 526 (8th Cir. 2006), citing <u>Mayer v. Nextel W. Corp.</u>, 318 F.3d 803, 806 (8th Cir. 2003); <u>Eide v. Grey Fox Technical Servs. Corp.</u>, 329 F.3d 600, 604 (8th Cir. 2003); <u>Philip v. Ford Motor Co.</u>, 328 F.3d 1020, 1023 (8th Cir. 2003).  For these purposes, a disputed fact is "material" if it must inevitably be resolved and the resolution will determine the outcome of the case, while a dispute is "genuine" if the evidence is such that a reasonable Jury could return a Verdict for the nonmoving party.  See, <u>Anderson v. Liberty Lobby, Inc.</u>, 477

U.S. 242, 248 (1986); Planned Parenthood of Minnesota/South Dakota v. Rounds, 372 F.3d 969, 972 (8th Cir. 2004); Fenney v. Dakota, Minnesota & Eastern R.R. Co., 327 F.3d 707, 711 (8th Cir. 2003).

As Rule 56(e) makes clear, once the moving party files a properly supported Motion, the burden shifts to the nonmoving party to demonstrate the existence of a genuine dispute.  In sustaining that burden, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavit or as otherwise provided in this Rule, must set forth specific facts showing that there is a genuine issue for trial."  Rule 56(e), Federal Rules of Civil Procedure; see also, Anderson v. Liberty Lobby, Inc., supra at 256; Eddings v. City of Hot Springs, Ark., 323 F.3d 596, 602 (8th Cir. 2003).  Moreover, the movant is entitled to Summary Judgment where the nonmoving party has failed "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, supra at 322; see also, Forest Park II v. Hadley, 408 F.3d 1052, 1057 (8th Cir. 2005); Mercer v. City of Cedar Rapids, 308 F.3d 840, 843 (8th Cir. 2002); Hammond v. Northland Counseling Center, Inc., 218 F.3d 886, 891 (8th Cir. 2000).  No genuine issue of fact exists in such a case because "a complete failure of proof concerning an essential element of the

nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, supra at 323; see also, Sallis v. University of Minnesota, 408 F.3d 470, 474 (8th Cir. 2005); Davis v. U.S. Bancorp, 383 F.3d 761, 768 (8th Cir. 2004); Bell Lumber and Pole Co. v. United States Fire Ins. Co., 60 F.3d 437, 441 (8th Cir. 1995).

      2.   Legal Analysis. The crux of the Plaintiff's claim rests in his allegation that the Defendants adopted an improper course of treatment for his skin condition, and specifically, that the Defendants continued to prescribe "medication that had previously failed," see, Plaintiff's Objection to Defendants' Memorandum of Law in Support, Docket No. 74, at p. 7, rather than prescribing Lac Hydrin, which he claims is "the only way to effective[ly] treat his condition." Id. at p. 2.

The Defendants respond by underscoring that they are entitled to an Order granting Summary Judgment, because the Plaintiff has not alleged facts sufficient to state a claim, under the Eighth Amendment, upon which relief can be granted. The Plaintiff has strenuously countered that the Defendants' conduct constitutes a deliberate indifference to his medical needs. See, Plaintiff's Objection to Defendants' Memorandum, supra at p. 39.[5]

---

[5]The Plaintiff admits in his Complaint that he has not exhausted his administrative remedies, which is required before a suit may be filed under Title 42 U.S.C. §1983. Section 1997e(a) provides that, "[n]o action shall be brought with

a.     The Eighth Amendment Claim.

1)     Standard of Review.   It is well-established that deliberate indifference to a prisoner's serious medical needs is prohibited by the Eighth Amendment.  See, Estelle v. Gamble, 429 U.S. 97, 104-05 (1976); Albertson v. Norris, 458 F.3d 762, 765 (8th Cir. 2005).  "A prisoner's Eighth Amendment rights are violated if prison officials show 'deliberate indifference' to the prisoner's 'serious medical needs.'"  Olson v. Bloomberg, 339 F.3d 730, 735 (8th Cir. 2003), quoting Estelle v. Gamble, supra at 106.  To prevail on a claim of constitutionally inadequate medical care, an inmate must "demonstrate (1) that [he] suffered objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs." Dulaney v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997), citing Coleman v. Rahija, 114 F.3d 778, 784 (8th Cir. 1997); Crow v. Montgomery, 403 F.3d 598, 602 (8th Cir. 2005); Pagels v. Morrison, 335 F.3d 736, 740 (8th Cir.

_____

respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." See, Title 42 U.S.C. §1997e (a).  However, exhaustion is "an affirmative defense that the defendant has the burden to plead and to prove," and a lack of exhaustion does not deprive Federal Courts of subject matter jurisdiction.  See, Nerness v. Johnson, 401 F.3d 874, 876 (8th Cir. 2005), citing Foulk v. Charrier, 262 F.3d 687, 697 (8th Cir. 2001).  By not pleading the Plaintiff's failure to exhaust his administrative remedies as an affirmative defense, the Defendants have waived their right to raise that argument.

2003); Tlamka v. Serrell, 244 F.3d 628, 633 (8th Cir. 2001). "As long as this threshold is not crossed, inmates have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise their independent medical judgment." Dulaney v. Carnahan, supra, citing Long v. Nix, 86 F.3d 761, 765 (8th Cir. 1996).

"Deliberate indifference may be manifested by prison doctors in responding to the prisoner's needs or by prison officials in intentionally denying or delaying access to medical care or intentionally interfering with prescribed treatment." Meloy v. Bachmeier, 302 F.3d 845, 848 (8th Cir. 2002). However, "[t]he prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." Jolly v. Knudsen, 295 F.3d 1094, 1096 (8th Cir. 2000), quoting Estate of Rosenburg v. Crandell, 56 F.3d 35, 37 (8th Cir. 1995), see also, Smith v. Clarke, 458 F.3d 720, 724 (8th Cir. 2006); Roberson v. Bradshaw, 198 F.3d 645, 647 (8th Cir. 1999)("'Mere negligence or medical malpractice, however, are insufficient to rise to a constitutional violation.'"), quoting Dulany v. Carnahan, supra at 1239; DeGidio v. Pung, 920 F.2d 525, 532 (8th Cir. 1990)("[T]he eighth amendment does not transform medical malpractice into a constitutional claim.").

2)   <u>Legal Analysis</u>.   Our initial inquiry focuses on whether the Plaintiff suffered from an objectively serious medical need, and whether the Defendants knew about that need but deliberately disregarded it.   See, <u>Jolly v. Knudson</u>, supra at 1096.   A serious medical need is 'one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention.'"   <u>Vaughn v. Greene County</u>, 438 F.3d 845, 851 (8th Cir. 2005), quoting   <u>Pool v. Sebastian County, Arkansas</u>, 418 F.3d 934, 944 (8th Cir. 2005), quoting in turn <u>Johnson v. Busby</u>, 953 F.2d 349, 351 (8th Cir. 1991); <u>Grayson v. Ross</u>, 454 F.3d 802, 808-09 (8th Cir. 2006).

The Plaintiff meets the first prong of the test, as the Defendants do not dispute that he received a diagnosis of ichthyosis from a physician.   See, <u>Grayson v. Ross</u>, supra at 809, citing <u>Aswegen v. Henry</u>, 49 F.3d 461, 464 (8th Cir. 1995)("To constitute an objectively serious medical need or deprivation of that need * * * the need or deprivation alleged must either be obvious to the layperson or supported by medical evidence, like a physician's diagnosis."), citing in turn <u>Bayerbach v. Sears</u>, 49 F.3d 1324, 1326-1327 (8th Cir. 1995); <u>Johnson v. Busby</u>, 953 F.2d 349, 351 (8th Cir. 1991). We proceed, then, to the second prong of analysis, which requires that we closely

examine the Record to determine whether the Defendants exhibited deliberate disregard for the Plaintiff's medical needs.  See, <u>Grayson v. Ross</u>, supra at 808-09.

Aside from the Plaintiff's bare allegations, there is simply no evidence, in this Record, that the Defendants deliberately disregarded his medical needs.   From October of 1998, until the time that the Plaintiff filed his Complaint, he was examined on several occasions concerning his complaints of severe dry skin.  On each of those occasions, some action was taken by medical personnel in responding to the Plaintiff's medical needs.  Those actions included prescribing the Plaintiff several prescription drugs -- namely, Theraderm, Absorbase, and antibiotic ointment, as well as Lac Hydrin -- which are designed to alleviate the symptoms of ichthyosis.

The Plaintiff's chief complaint relates to the "conservative" course of treatment, that was adopted by the Defendants, in not consistently prescribing Lac Hydrin lotion. See, <u>Plaintiff's Counter-Affidavit to Affidavit of Lee</u>, <u>Docket No. 76</u>, at ¶12 ("What defendants refer to as 'conservative treatment,' I view as a deliberate indifference to my serious medical needs * * * [and] from my viewpoint, it is a clear case of cruel and unusual punishment.").  However, the Record reflects that the prescribed formulary emollients -- namely, Theraderm and Absorbase -- are accepted treatments for ichthyosis, and there is evidence in the Record that the Plaintiff was sufficiently

- 16 -

satisfied with that treatment that he did not mention any skin problems for months at a time.  Accordingly, Dr. Lee recommended that a conservative course of treatment, encompassing the use of the formulary preparations of Theraderm and Absorbase, and prescribing Lac Hydrin for ninety (90) day periods, was the proper course.  See, Affidavit of Lee, supra at pp. 3-4, ¶¶11-14.

The Plaintiff attempts to undermine the propriety of Dr. Lee's medical opinion by pointing to a more aggressive treatment strategy that was adopted by a dermatologist at the St. Paul Ramsey Medical Center in 1989.  The Plaintiff argues that his medical records, which were available to Dr. Lee, contained evidence that prior physicians had attempted to treat his ichthyosis with both Theraderm and Absorbase, and had concluded that both formulary preparations were ineffective in treating the Plaintiff's skin condition.  However, our Court of Appeals has observed that a "mere disagreement with treatment decisions does not rise to the level of a constitutional violation," Phillips v. Jasper County Jail, 437 F.3d 791, 795 (8th Cir. 2006), citing Estate of Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir. 1995); Rowe v. Norris, 198 Fed. Appx. 579, 581 (8th Cir. 2006)(no claim when treating physician substituted similar medications for those prescribed by previous physician); Vaughn v. Lacey, 49 F.3d 1344, 1346 (8th Cir. 1995)(no claim when treating physician failed

to abide by prescription issued by previous physician), and the Plaintiff's conclusory assertions, and differences of opinion as to means of treatment, are insufficient to create a material issue of fact. See, <u>Jones v. Norris</u>, 310 F.3d 610, 612 (8th Cir. 2002); <u>Sherrer v. Stephens</u>, 50 F.3d 496, 497 (8th Cir. 1994).[6]

The Plaintiff overlooks, in a way that we cannot, Dr. Lee's averments, which have not been contradicted, as to the potential side-effects of Lac Hydrin. As attested to by Dr. Lee:

> Lac Hydrin 12% lotion (Ammonium Lactate 12%) was not included on the CMS formulary recommendation as an initial medication for ichthyosis. In my experience, Lac Hydrin 12% is the most caustic ichthyosis medication and has more potential unwanted side effects than Absorbase and Thermaderm. It contains 12% lactic acid neutralized with ammonium hydroxide resulting in a lotion pH of 4.5 to 5.5. It is very acidic and should be used only for as long as necessary to treat severe periods of ichthyosis because it can result in side effects which include burning, dryness, eczema, irritation, itching, peeling, rash, skin discoloration, small spots on the skin, and stinging.

<u>Affidavit of Dean Lee, M.D.</u>, <u>Docket No. 64</u>, at p. 3, ¶8.

---

[6]The Plaintiff further alleges that Dr. Lee deliberately neglected his treatment in order to save money, see, <u>Plaintiff's Counter-Affidavit to Affidavit of Lee</u>, <u>Docket No. 76</u>, at ¶12, but he provides no support for this claim, and we find no evidence, on the Record as a whole, that would substantiate that claim.

Dr. Lee's concerns about the extended use of Lac Hydrin 12% are corroborated by the Physicians' Desk Reference (56th Ed., 2000).   See, Affidavit of Dean Lee, M.D., Docket No. 64, Exhibit 2, at p. 2.   As should seem obvious, we are in no position, given the absence of any medical opinion evidence to the contrary, to second-guess Dr. Lee's efforts, as well as those of the remaining Defendants, to assure that the Plaintiff's treatment was reasonably effective without unnecessarily risking what could be permanently adverse side-effects from the more aggressive treatment that the Plaintiff appears to prefer.

As a consequence, the evidence establishes that the conservative treatment, which was adopted by the Defendants, was appropriate and, in any event, was not deliberately indifferent.   See, Logan v. Clarke, 119 F.3d 647, 649-50 (8th Cir. 1997) (prison doctors not deliberately indifferent when they treated inmate on numerous occasions and offered him variety of pain killers); Long v. Nix, supra at 765 (inmates do not have constitutional right to particular type of treatment and nothing in Eighth Amendment prevents prison doctors from exercising independent medical judgment.); Camberos v. Branstad, 73 F.3d 174 177 (8th Cir. 1995)(prison nurses not deliberately indifferent because they chronicled inmate's numerous medical complaints, often

referred him to a physician's assistant, and sent him to outside hospital seven times for further treatment).

Beyond his direct contention, that the Defendants denied him his Eighth Amendment right to effective medical treatment, the Plaintiff advances related claims, albeit indirectly. Since we find no Eighth Amendment violation, we need not address those subordinate issues but, in the interests of completeness we will briefly consider them. For example, the Plaintiff alleges that the Defendant CMS has violated his rights by having adopted a policy for the treatment of skin diseases that he finds to be unsuitable for him. Of course, an employer, such as CMS, can be sued under Section 1983, based on the acts or omissions of its employees, but only when the claimant pleads that an employee's wrongful conduct resulted from some particular policy or custom of the employer, or from the employer's failure to adequately train or supervise its employees. See, City of Canton v. Harris, 489 U.S. 378, 386-87 (1989); Monell v. Department of Social Servs., 436 U.S. 658, 690 (1978); Crumpley-Patterson v. Trinity Lutheran Hosp., 338 F.3d 588, 590 (8th Cir. 2004).

The rule is applicable not only where the named defendant is a governmental entity, but also where, as here, the defendant is a private corporation that may be deemed to be acting under color of State law for Section 1983 purposes. See, Leach

- 20 -

v. Norris, 34 Fed. Appx. 510, 511 (8th Cir. 2002); Sanders v. Sears, Roebuck & Co., 984 F.2d 972, 975 (8th Cir. 1993); Lux By Lux v. Hansen, 886 F.2d 1064, 1067 (8th Cir. 1989); see also, Harvey v. Harvey, 949 F.2d 1127, 1129-30 (11th Cir. 1992); Powell v. Shopco Laurel Co., 678 F.2d 504, 506 (4th Cir. 1982). Therefore, to state a cognizable Section 1983 claim against CMS, it is not sufficient for the Plaintiff merely to allege that CMS's employees violated his constitutional rights. He must allege that CMS had adopted a policy or custom that caused a violation of his constitutional rights, or that such a violation occurred as a direct result of CMS's failure to adequately train or supervise its employees. Here, in finding that Dr. Lee did not commit a constitutional violation in his treatment of the Plaintiff, we are not empowered to consider the constitutionality of CMS's skin treatment policy as to others, as we have found no constitutional infirmity in that policy, as it has been applied to the Plaintiff.

We would add, however, that, even though the Plaintiff claims that CMS maintained such an unconstitutional policy, he admits that Lac Hydrin was not on the formulary list maintained by the Department of Corrections before CMS assumed responsibility for medical services, nor does he allege, let alone proffer any evidence, that any of the Defendants changed the formulary in order to deprive him of his

desired medications.  See, Plaintiff's Counter-Affidavit to Affidavit of Lee, supra at ¶8.  The Plaintiff further attests that he has "no doubts that [the] CMS formulary was designed with honorable intentions in mind," see, Plaintiff's Counter-Affidavit to Affidavit of Tripoli, supra at ¶10, and that he has "no qualms" with the requirement that Dr. Tripoli authorize CMS Regional Directors, including Dr. Lee, to utilize formulary medications before prescribing non-formulary medications.  See, id. at ¶9.

Essentially, therefore, the Plaintiff's only complaint about the CMS formulary policy is that Dr. Lee, on occasion, denied the Plaintiff's request for non-formulary Lac Hydrin, which we have already determined was not a violation of his Eighth Amendment rights.  The Plaintiff complains that CMS's policy lacks a provision that provides notice to prisoners when non-formulary requests have been denied, and that, having to wait for a prescription "without notice of nondelivery * * * is another form of deliberate indifference and cruel and unusual punishment," id. at ¶12, but he does not allege that he has been denied medical treatment as a result of CMS's failure to notify him that his physician's non-formulary requests were not approved.  Thus, the Plaintiff has not made a claim that rises to the level of cruel and unusual punishment as it has been defined in this Circuit.

Finally, in his Complaint, the Plaintiff concedes that he is receiving Lac Hydrin, but claims that he is subject to "cruel and unusual punishment" by being forced to pay for a physician's visit every three (3) months for a renewal of that prescription, "for a condition [the Defendants] know [the Plaintiff] will have for life." Complaint, supra at p. 4.  In his Memorandum, the Plaintiff argues that the policy for Offender Co-Payment for Health Services does not require a $3.00 co-payment "for follow up visits ordered or scheduled for a health care provider," id. at pp. 37-38, and asks that his prescription for Lac Hydrin "be automatically dispensed * * * [or] replaced upon a timely request without charge."   See, Plaintiff's Objections to Defendants' Memorandum, supra at p. 36.  While this argument does not reveal any potential constitutional violations, we address it nonetheless.

In Shapley v. Nevada Board of State Prison Commissioners, 766 F.2d 404 (9th Cir. 1985), the Court of Appeals for the Ninth Circuit considered a prisoner's claim that a $3.00 fee for each medical visit denied him medical treatments and constituted deliberate indifference to his medical needs.  The Court rejected that claim, however, noting that the prisoner had failed to allege that he was denied medical treatment because of the $3.00 charge, or that the prison officials used the charge to deny medical attention to other prisoners who were indigent.  Id. at 408.  On similar facts,

- 23 -

our Court of Appeals came to the same conclusion, albeit in an unpublished opinion. See, <u>Blaise v. McKinney</u>, 187 F.3d 640 at *1 (8th Cir. 1999)(Table Decision); see also, <u>Emil v. Crawford</u>, 125 Fed.Appx. 112, 112-13 (9th Cir. 2005)(charging prisoner for prescription drugs does not constitute cruel and unusual punishment); cf., <u>Keller v. Faecher</u>, 44 Fed.Appx. 828, 831 (9th Cir. 2002)(prisoner alleged deliberate indifference when physician recommended over-the-counter medication he knew prisoner might lack the funds to purchase).  Here, the only hardship the Plaintiff alleges is that it was inconvenient for him to follow the CMS's procedure for co-payment.  As with his other claims, in this argument the Plaintiff has also failed to establish that he has been subjected to cruel and unusual punishment by being denied access to treatment for his medical needs. Consequently, we recommend that the Defendants' Motion for Summary Judgment be granted, and the Plaintiff's claims dismissed.

NOW, THEREFORE, It is –

RECOMMENDED:

1.     That the Defendants' Motion for Summary Judgment [Docket No. 61] be granted.

2.      That the Plaintiff's "Motion Moving the Court for an Order Mandating That An Expert Witness Is Not Required" [Docket No. 34] be denied, as moot.

3.      That the Plaintiff's "Motion to Accept Plaintiff's Objections to Reply Memorandum" [Docket No. 84] be denied, as moot.

Dated: February 16, 2007                    *s/Raymond L. Erickson*
                                            Raymond L. Erickson
                                            CHIEF U.S. MAGISTRATE JUDGE

### N O T I C E

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than March 5, 2007,** a writing which specifically identifies those portions of the Report to which objections are made and the bases for those objections.  Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of the Hearing, then the party making the objections shall timely order and file a complete

- 25 -

transcript of that Hearing **by no later than March 5, 2007,** unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.